### 9482, 9511.　DIXON & CO. v. BANK OF QUITMAN;
### and vice versa.

1. "The payee of an accepted bill, who has paid value to the drawer before maturity, is not concerned with the consideration as between drawer and acceptor. He holds the bill unaffected by equities in favor of the acceptor against the drawer." Flournoy v. First National Bank, 79 Ga. 810 (2 S. E. 547).

2. Where fraud, accident, or mistake is not set up, parol evidence is not admissible to vary the terms of an acceptance which is absolute and unconditional on its face, by showing that it was in fact intended to be based upon a condition. Heaverin v. Donnell, 7 Smedes & M. (Miss.) 244 (45 Am. D. 302); Ray v. Morgan, 112 Ga. 923 (38 S. E. 335); Rheney v. Anderson, 22 Ga. App. 417 (96 S. E. 217).

3. "An unaccepted check, drawn in the ordinary form, not describing any particular fund or using words of transfer of the whole or any part of any amount standing to the credit of the drawer, does not amount to an assignment at law or in equity of the money to the credit of the

drawer;" and the non-payment of such a check does not give the payee a right of action against the drawee.  *Reviere* v. *Chambliss,* 120 *Ga.* 714 (48 S. E. 122).

4. "A promise by the cashier of a bank, made without consideration to the drawer of a draft, to pay the same out of funds of a customer on whom the draft is drawn and who has been credited with the proceeds of negotiable paper which he as owner transferred to the bank, is not enforceable against the bank, unless the customer assents that the bank shall make such an application of the funds so placed to his credit." *Bullard* v. *Bank of Madison,* 121 *Ga.* 527 (49 S. E. 615).

DECIDED JANUARY 16, 1919.

Assumpsit; from city court of Savannah—Judge Freeman. October 8, 1917.

Suit was instituted by the Bank of Quitman as payee and holder of a draft for $1,250, drawn by Thompson on the defendants, Dixon & Company, who unconditionally accepted it in writing before it was discounted by the plaintiff. This acceptance was the last of a series of similar transactions. The defendants contend that they should not be held liable on their acceptance, for several reasons, in substance as follows: (1) Because it was merely for accommodation and without any benefit flowing to them, and that this was known to the plaintiff when it discounted the draft. This ground of defense is not, however, relied upon by counsel, who state that it was made only by way of inducement, in order to show the relationship between the parties. (2) Because when Thompson deposited with the plaintiff the proceeds of the draft, the plaintiff knew, both by virtue of the previous course of dealings and by the statement then made to it by Thompson, that this was done with the understanding and agreement that the amount of the draft was to be applied in part payment of a check for $1,500 which Thompson was to draw in favor of the defendants, to cover their acceptance and payment of a previous draft in the latter amount, and yet, despite such knowledge and understanding, the plaintiff applied these funds and other sufficient funds, later deposited by Thompson for the same understood and stated purpose, to the payment of other checks drawn by Thompson. (3) Because the plaintiff failed to pay the said $1,500 check drawn on it by Thompson in favor of the defendants, although it had sufficient funds of Thompson for that purpose at the time of its presentation. (4) Because the plaintiff failed to pay a draft drawn on Thompson by the defendant with the said check attached, as the plaintiff had promised and agreed in writing to do, but

applied the funds of Thompson held by it, and which were sufficient for that purpose, to the payment of other claims against Thompson.

The evidence shows that Thompson had been engaged for a number of years in the sawmill business, and had shipped a large part of his lumber to the defendants; and that during this period an arrangement between Thompson and the defendants, and for the accommodation of Thompson, was in operation, whereby Thompson was accustomed to draw sixty-day and ninety-day drafts upon them, which they would accept, and which Thompson would then discount with the plaintiff, and which when due would be paid by the acceptors giving their check therefor, and that Thompson, for the purpose of settling the obligation thus raised in their favor, would send to them his check on the Bank of Quitman for a like amount, and, in order to take care of the check thus sent to them, would draw another draft upon them, but for a less amount, which would also be accepted by them, and which would in turn be discounted by Thompson with the plaintiff bank, and the proceeds thereof placed in the said bank to the credit of Thompson's general account; and that Thompson would then have on deposit or else would place on deposit a sufficient amount to cover the difference between the amount of his check and the proceeds of the second draft. There was no direct testimony from either the defendants or Thompson that the plaintiff had knowledge that the last acceptance made by the defendants, and on which the suit is entered, was for the purpose of providing a portion of the funds whereby Thompson would be enabled to discharge his previous indebtedness to the defendants; while on the other hand the cashier of the plaintiff bank testified positively and unequivocally that neither he nor the bank had such knowledge; and the judge trying the case without a jury, was therefore authorized to find that this was true, and that so far as the bank knew or was informed, each of these transactions was a separate and distinct transaction, and bore no relation to each other. There was no evidence to sustain the allegations of the defendants' answer that the drafts on other persons, deposited by Thompson with the plaintiff bank, were deposited with the agreement, direction, or understanding that the proceeds should be applied to the payment of the $1,500 check drawn by Thompson in favor of the defendants and upon the

plaintiff bank; nor was there any evidence that Thompson subsequently directed the bank to pay this check or the defendants' draft out of these or other funds. The evidence fails to disclose that there was on deposit with the said bank, to the credit of Thompson, sufficient funds to pay the $1,500 check or the draft at the time of their several presentations. The letter and telegram relied upon by the defendants to show a promise on the part of the bank to pay from these funds the defendants' draft on Thompson are as follows:

(Telegram.)                    "Quitman, Ga., October 13th.
"J. M. Dixon & Co., Savannah, Ga.    John R. Thompson has deposited enough items here for collection to make your draft for fifteen hundred good. Think can remit in few days, as soon as returns are had.                    The Bank of Quitman."

The letter was dated October 21, 1914, addressed to the Exchange Bank of Savannah, and was as follows: "I have yours of the 20th relative to draft of J. M. Dixon & Company on Jno. R. Thompson for $1500.00. I have been holding this draft here trying to collect it. Mr. Thompson has been depositing items for collection and we put them through with some paid and a good many of them being returned unpaid. We have worked the collected balance up to within a few hundred dollars of having enough to take up the draft. We may get enough to-day to finish it, and if so will remit it this week, possibly to-day or to-morrow, depending upon just what we get from him to-day. We are protecting balance collected against anything else. We hope this is satisfactory. [Signed]    H. M. Stubbs, Cashier."

Upon the trial of the case the court rendered the following judgment: "The above cause was submitted to the court for its determination (without the intervention of a jury) of the law and the facts. The objections to testimony are all overruled. I think the testimony shows that the paper sued on was an accommodation paper. I think also that it shows that plaintiff was not advised of this fact at the time it was discounted. But these facts do not affect the respective rights of the parties involved here. Some of the questions propounded to Thompson were leading, but notwithstanding this, I think the objections on that ground were properly overruled. In my judgment the defense and counterclaim of James M. Dixon & Co. are not sustained by the record.

An agreement *to which the bank was a party,* as contended for by the defendant, is not established by the evidence. It is therefore considered, ordered, and adjudged that the plaintiffs above named do recover from the defendants above named the principal sum of $1,250 principal, with interest thereon at 7% per annum from December 11, 1914, and also $1.50 protest fees, 25 cents revenue stamp affixed to certificate of protest, and also all costs of court, without offset or deduction on account of the defensive matter and counterclaim set up by defendants."

*Osborne, Lawrence & Abrahams,* for plaintiffs in error.

*William L. Clay,* contra.

JENKINS, J. (After stating the foregoing facts.)

Under an application of the different principles of law stated in the syllabus, there was no error in the judgment rendered in the court below. In point of fact it does not appear (and the judge so held) that there was ever any express or implied agreement that the unconditional written acceptance as made by the defendants was based upon a parol condition that the proceeds derived therefrom should only be applied in part payment of a previous indebtedness owing to the defendants by Thompson; but under our view of the law, even had this been made to appear, it would not have been competent, in the absence of a plea setting up fraud, accident, or mistake, to thus vary the terms of the absolute and unconditional written acceptance, by showing that it was in fact based upon a condition.

It furthermore does not appear that there were ever sufficient funds in the bank to pay either the $1,500 check drawn by Thompson, or the draft upon him drawn by the defendants, upon their respective presentations, but even had such been the case, under the authority cited in the third headnote we think that the failure on the part of the drawee to pay an unaccepted check would not give to the payee thereof a right of action against him, since there ordinarily exists no privity of contract between the payee and the person on whom the check is drawn.

Under the authority cited in the fourth headnote, even had the promise to the defendants by the bank to pay the defendants' draft been absolute and unconditional, it still would not have been a binding agreement on the part of the bank unless it had been made to appear that the drawee had contemporaneously

assented that the bank might accumulate and hold for such specific purpose the funds of Thompson then accruing on deposit in said bank. It does not appear, however, either that the promise by the bank was absolute or unconditional, or that any such direction or authority for such specific application had been given it.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. Wade, C. J., and Luke, J., concur.*